ANSELM FRANKEL AND CARRIE BALDAUF, Trustees, v. EMAN-
UEL HITES, Appellee, AND W. S. LOCKWOOD, Adminis-
trator, *et al.,* Appellants.

**Agreement to Release Mortgage:**   BREACH:   *Agency.*   Realty was
conveyed, on which was a mortgage, which the mortgagee
promised to release.   The vendor's agent and the purchaser
met at a third party's office to close the transaction.   The deed
was delivered to the purchaser, and a draft was handed to such
third person, who promised to obtain the release, and a receipt
for the amount given by him to the purchaser.   No arrange-
ment was had by the vendor with such third party to forward the
money for the release.   The purchaser afterwards mentioned
to others his distrust of the vendor, and indicated that he
relied on such third party to obtain the release.   Such third
party paid to the purchaser all except the sum retained for
securing the release, which he failed to procure.   *Held* suffi-
cient to show that the purchaser undertook through such
third party to procure the release, and hence he must suffer
the loss occasioned by the agent's delinquency.

*Appeal from Mahaska District Court.*—HON. A. R. DEWEY,
Judge.

SATURDAY, DECEMBER 22, 1900.

ON the twelfth day of March, 1896, Emanuel Hites
executed to Reuben Shibley his warranty deed of the south-
west ¼ southeast ¼, of section 1 in township 74 north, of range
17 west of fifth Principal Meridian.   The agreed considera-
tion was $800, of which $600 was left with C. P. Searle, to
be forwarded to the Aetna Life Insurance Company, to ob-
tain a release of this 40 acres from a mortgage of $3,000 held
by it on this and other lands.   Searle did not send the money,
but failed in June, 1896.   On November 20th of that year
Shibley began an action against Hites for breach of warranty,
based on the existence of this mortgage.   Later, on the twen-

ty-fifth of this month, plaintiffs began suit for the foreclosure of said mortgage. These actions were consolidated, and thereafter Lockwood, who had been appointed administrator of the estate of Shibley, who died in September, 1898, and the heirs of deceased, were made parties. The pleadings, when completed, were such as to raise but the one issue. Did leaving the $600 with Searle constitute payment to Hites? The district court answered this question in the negative, and entered decree accordingly. The administrator and heirs of Shibley appeal.—*Affirmed.*

*John O. Malcolm* for appellants.

*Bolton, McCoy & Bolton* and *L. C. Blanchard* for appellee.

LADD, J.—Hites sold 40 acres of land to Shibley for $800. The Aetna Life Insurance Company held a mortgage on it and other land, but had promised to release the 40 upon the payment of $600. About March 12, 1896, Hites' son, acting for his father, and Shibley, accompanied by Lockwood, met, in pursuance of a previous arrangemenet, at Searle's office to close the deal. There the deed was delivered to Shibley, and a draft of $800 was either handed by the latter to Searle, or laid on the counter. An abstract was also furnished by Hites, and a receipt for the money given by Searle to Shibley. Hites' testimony to this effect is fully corroborated, by Shibley's subsequent statements, though inferentially denied by Lockwood. Hites also testified that Shibley advised Searle that he wanted a release as soon as he could obtain it, and that the latter promised to get it. This is not directly denied by Lockwood, and it appears that Shibley afterwards mentioned to others his distrust of Hites, and indicated that he depended on Searle to obtain the release from the mortgage. Certain it is that no agreement was had by Hites with Searle to forward the money. For what purpose,

then, could it have been left there? If the money was not paid to Searle, how did it happen that Shibley took his receipt? If payment to Hites was intended, why was not the draft delivered directly to him? The only reasonable inference to be drawn from the circumstances disclosed is that Shibley undertook, through Searle, from the purchase price, to procure the release, and that Hites acquiesced in that method of closing the transaction. The latter was subsequently paid, at different times, all but the $600 retained for this purpose. The fact that Searle credited the entire amount to Hites is entitled to no weight. The time of making this entry in his books is not shown, and for this reason, if for no other, cannot be regarded as a part of the *res gestae*. It was simply his method of keeping an account, and, at the most, amounted to no more than hearsay—a written instead of an oral statement of a past transaction, concerning which, for all this record shows, he might have been called upon to testify. Nor is the evidence of the expressed opinion of a witness concerning liability in this case of any consequence, as it does not appear to rest on a state of facts assumed in any way inconsistent with the testimony given. Had nothing occurred save the delivery of the deed and the transfer of the draft, there would be much force in the contention that the payment in that manner was accepted. But the evidence adduced quite satisfactorily shows that Shibley trusted Searle, rather than Hites, with his money, and his estate must suffer the loss occasioned by the delinquency of his agent.—AFFIRMED.